AMERICAN SURETY COMPANY *v.* WILLIAM S. NOBLE.

[No. 45, October Term, 1927.]

*Decided January 11th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James U. Dennis,* with whom was *Michael W. Fahey* on the brief, for the appellant.

*William H. Harlan,* with whom was *Noble L. Mitchell* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

The record in this case discloses certain facts which may be thus summarized in narrative form: Elizabeth Cook and others, owners of certain property located in Harford County, on September 27th, 1920, gave a mortgage thereon to Robert Archer for the sum of $4,000. Subsequently, on August 21st, 1922, the said owners executed another mortgage on the property to William S. Noble for the sum of $7,000, in which second mortgage Jacob A. Doxen was named as attorney to make sale of the mortgaged property in event of default. On January 15th, 1925, default having occurred in the second mortgage, Doxen instituted foreclosure proceedings in the Circuit Court for Harford County, and on that day filed his bond in the penalty of $8,000, with the appellant, the American Surety Company of New York, as surety. On March 19th, 1925, Doxen reported to the court that on February 9th, 1925, he had offered the property described in the mortgage at public sale at the courthouse door in Bel Air, but, receiving no bid therefor, had withdrawn the same and held it for private sale; and further reported that, since the public offering, to wit, on March 19th, 1925, he had sold the said property at private sale to Elizabeth M. Doxen of Harford County at and for the sum of $7,000, free and clear of all prior liens. The usual *nisi* order was passed upon said sale as reported, whereupon, there being no exceptions filed, the same was finally ratified and confirmed on April 22nd, 1925.

The case was then referred to the auditor, who stated an account on August 5th, 1925, in which Jacob A. Doxen, attorney, was charged with $7,000, the amount received from sale of lands and premises, as per attorney's report of sale. The auditor then allowed the usual commissions and fees, together with taxes for 1924, amounting in the aggregate to $535.68, leaving a balance for distribution of $6,464.32, which distribution was made as follows: To Jacob A. Doxen, assignee of judgment, per order of court, said judgment being a prior lien to the mortgage, amount of judgment and interest, $307.48; and the balance of $6,156.84 to William S.

Noble on account of his mortgage of $7,000 and interest; upon which audit a *nisi* order was passed. Two days after the final ratification of the sale to Elizabeth M. Doxen, the attorney conveyed said property to her, and in the deed recited that the purchase price of $7,000 had been fully paid. On the same day, April 24th, 1925, Elizabeth M. Doxen and Jacob A. Doxen, her husband, conveyed said property to Stella I. Neikirk by way of mortgage to secure a loan of $5,000 from Mrs. Neikirk to Mrs. Doxen, which sum of $5,000 was paid to Jacob A. Doxen, attorney; both the deed to Mrs. Doxen and the mortgage from her and husband to Mrs. Neikirk being duly recorded.

On October 8th, 1925, before the final ratification of the auditor's report, a petition was filed by Mrs. Neikirk, alleging that in said report there is distributed to Doxen $307.48; that, at the time the foreclosure proceedings were brought, the mortgage from Cook *et al.* to Archer for $4,000 was still outstanding, which said mortgage was assigned by Archer, at the request of Doxen, to B. Irene Amoss and others on November 23rd, 1922, and is still held by them, and is a first lien on the property sold in these proceedings; that Doxen, as attorney in the mortgage to Noble, sold the property to Mrs. Doxen, and through her secured a loan from the petitioner on the property by way of a mortgage for the sum of $5,000, representing to the petitioner that said mortgage was a first lien on the said property; that, at the time Doxen and wife made this representation to the petitioner, they knew the said $5,000 mortgage was not a first lien on the property, and that the mortgage now held by the Amosses, of $4,000 and interest, was a prior lien on said real estate; that said real estate is not worth more than $5,000. The prayer of the petition was for an order directing the auditor to state a new account, allowing the $307.48 distributed to Doxen, together with his commissions amounting to $325, to the petitioner, to be applied on account of the amount due by the Doxens to her.

No action was taken upon this petition, and, on March 3rd, 1927, the appellant filed a petition alleging substantially the

facts above set forth, and further alleging that, by the reported sale to Elizabeth M. Doxen, free and clear of all liens, for the sum of $7,000, and the subsequent deed to her, in which it was recited that the whole of the purchase price had been fully paid, the said Doxen, either with or without the knowledge and acquiescence of his wife, did perpetrate a gross fraud on the court, and on the appellant as surety on his bond, in that at the time of said alleged sale there was outstanding and unpaid a prior lien, represented by the mortgage from Cook *et al.* to Archer, on which mortgage there was then due the sum of $4,000 and certain interest; the said fraud being further evidenced by the fact that Mrs. Doxen was without funds or property with which to pay the purchase price of $7,000, and did not pay any part thereof, the only money coming into the hands of Doxen in consequence of said sale being the sum of $5,000 raised through the mortgage to Mrs. Neikirk; that the mortgage from Cook *et al.* to Archer, assigned to the Amosses, was by them assigned to Michael W. Fahey for the purpose of foreclosure, and the last-named assignee proceeded to foreclose the same under the power of sale in said mortgage, and sold the property, being the same property covered by the mortgage to Noble, to Stella I. Neikirk in fee simple for $4,700; that out of the purchase price, after the payment of expenses and other costs incident to the proceedings, and the payment of the mortgage debt and interest, there remained only the sum of $14.75, which, under the order of the court, was paid over to Stella I. Neikirk; that from the facts hereinbefore set forth it appears, and the petitioner charges, that the equity covered by the mortgage from Cook *et al.* to Noble was worth nothing, and that nothing passed under the purported and fraudulent sale reported by Doxen, attorney, to his wife Elizabeth M. Doxen, or under his deed to her, or under the mortgage from Doxen and wife to Mrs. Neikirk, and that the mortgage loan of $5,000 from Mrs. Neikirk to Mrs. Doxen was the only thing received by Doxen, attorney, on account of or by virtue of said alleged sale under the power contained in the mortgage from Cook *et al.* to Noble; that in consequence of said alleged sale to

Mrs. Doxen for $7,000, and the final ratification thereof, and in furtherance of the fraud therein, and notwithstanding that he had, at most, only received the sum of $5,000 on account of the purchase price for which the property was reported as having been sold, Doxen, in order to delay as far as possible the discovery of his fraud, caused or permitted the papers in the case to be referred to an auditor to state an account between him and the alleged trust fund of $7,000. The petition of the appellant further alleges the insolvency of Doxen at the time of and ever since the sale by him, as attorney, to his wife, and that he was then and is now wholly unable financially to respond to any demand made on his bond, on which the petitioner is surety; that the petitioner was entirely innocent and ignorant of said frauds of Doxen, individually and as attorney, and of Elizabeth M. Doxen, and knew nothing thereof until long after the auditor's report and account was stated and filed in these proceedings. The prayer of the petitioner is that the order of court, dated August 5th, 1925, giving *nisi* ratification of the auditor's report, may be stricken out, and that the court may determine and decree that the auditor state another report and account, and that in such new account, Doxen, attorney, shall be charged with only $5,000 or so much thereof as he may be shown to have actually received as the proceeds of the alleged sale to Mrs. Doxen. In this petition of the appellant is a prayer for subpoena, directed to Elizabeth M. Doxen, William S. Noble, Stella I. Neikirk, Jacob A. Doxen, and Jacob A. Doxen, attorney.

Thereafter Jacob A. Doxen, individually and as attorney, and Elizabeth M. Doxen, filed their answer to the petition of the appellant, admitting the facts stated in the petition and exceptions, and consenting to any decree that might be properly passed therein.

On April 6th, 1927, a demurrer was filed to the petition and exceptions of the appellant by William S. Noble, the appellee, upon the grounds that the petitioner had not stated such a case as entitled it to any relief in equity against the respondent; that the petition was multifarious; and that the petitioner could not raise in this matter by petition the ques-

tions sought to have adjudicated. After hearing on the demurrer, the same, on April 25th, 1927, was sustained; and on the same day the exceptions to the audit filed by Stella I. Neikirk were by her dismissed, and the auditor's report and account was finally ratified and confirmed. From the orders sustaining the demurrer, and finally ratifying the auditor's report and account, this appeal was taken.

The contention, made by the appellee as ground for his demurrer, that the petition is multifarious, is untenable. All of the matters stated in the petition relate to a proper audit, and the parties against whom subpoenas were directed have, as shown by the allegations of the petition, an interest in the statement of a proper audit and account. There is no unvarying or inflexible rule as to what constitutes multifariousness, and by the very nature of the doctrine it is a question resting somewhat in the discretion of the court under the circumstances of each particular case. Considerations of convenience have been given much part in the decision of this question by the courts in their endeavor on the one hand to avoid multiplicity of suits, and on the other, against the imposition of needless costs, delays, and embarrassments resulting from the joinder of distinct matters or the making of plaintiffs and defendants who have no common interest in the question to be decided. Considering the rule in the broader aspect, it has been held that the objection of multifariousness ought only to apply where the case of each defendant is entirely distinct from that of the other defendants, and it is not indispensable that all the parties should have an interest in all the matters contained in the bill. It will be sufficient if each party have an interest in some material matters in the suit, and they are connected with the others. *Miller's Eq. Proc.,* p. 139; *Peters v. Van Lear,* 4 Gill, 249.

The contention that the appellant cannot have the question here sought to be determined raised by petition, is also, in our opinion, unsound. It is undoubtedly true that if the appellant, as surety for Doxen, is liable for $7,000, the purchase price at the foreclosure sale made by Doxen as attorney, it would have no such interest in the distribution of that

fund as would entitle it to intervene; but such is not this case. The contention here is, not that the appellant has any standing to object to a distribution of the fund for the payment of which it is liable, but that the fund charged in the account of $7,000 for distribution is an improper one, in that by reason of the subsequent sale under the first mortgage, and the settlement of that mortgage, Doxen, the principal, and therefore the surety, would be required to make payment of only the difference between $7,000 and the amount required to settle the first mortgage. The result sought by the petition of the appellant is to have the amount with which the auditor's account, as stated, charges Doxen, and therefore his surety, reduced. This contention is distinctly different from asking the court to make a certain distribution of a fund, the liability for the payment of which the appellant would admit. In other words, the appellant does not claim any interest in the distribution of any fund for the payment of which it is properly liable, but contends that the amount stated by the account for distribution, to which it filed exceptions, is greater than it should be compelled to pay. The appellant admits that, by the powers and duties reposed in Doxen, as attorney, by the terms of the Noble mortgage and the report of the sale made by him thereunder, in which it was stated that the property was sold free and clear of prior encumbrances, and which sale was finally ratified by the court, Doxen was required to collect the full purchase money of $7,000, and out of it pay all liens upon the property which were prior to the Noble mortgage; but contends that at the time its exceptions were filed the first mortgage to Archer had been satisfied, and therefore Doxen was not required to collect from Mrs. Doxen, the purchaser, so much of the $7,000 purchase price as would have been necessary to settle the principal and interest of the Archer mortgage.

The obligation of the bond upon which the appellant is surety is such "that if the above bounden Jacob A. Doxen does and shall well and faithfully perform the trust reposed in him by said power or that may be reposed in him by any future decree or order in the premises, then the above obli-

gation to be void, otherwise to remain in full force and virtue in law." It cannot be disputed that it was Doxen's duty to collect the full purchase price and distribute it, after the payment of costs and expenses of the sale, in payment of encumbrances which were prior to the Noble mortgage, and that his surety guaranteed, to the extent of the penalty in the bond, the faithful performance of that duty. The effect of this was to obligate itself to pay all amounts, up to $8,000, the penalty of the bond, which Doxen could be rightfully required to pay and had not paid. Therefore any part of the purchase price of $7,000 which Doxen has paid relieves him, and correspondingly relieves his surety; and this is true whenever such payment is made in accordance with the duties imposed upon Doxen by the powers contained in the Noble mortgage, or by the report of sale showing that it had been made free and clear of prior encumbrances. The proper decision of this question is reached by determining whether or not Doxen has made any such payment. If he has not, he is liable for the whole of the $7,000 purchase price; and his surety occupies that identical position. The Archer mortgage has been satisfied; but this was accomplished by the sale, under the powers contained in that mortgage, of the property, which at the time of that sale belonged to Mrs. Doxen, and upon which Mrs. Neikirk had a mortgage for $5,000. Doxen did not contribute anything, in property or money, to the satisfaction of the Archer mortgage, but, on the contrary, collected and squandered the $5,000 loaned by Mrs. Neikirk to Mrs. Doxen, secured by mortgage. It is therefore apparent that Doxen still owes the full purchase price of $7,000, no part of it to the holders of the Archer mortgage, which has been satisfied, but to those whose property was sold, involuntarily and under a compulsion, to make good his default in not paying the Archer mortgage to the holders thereof, and to Noble. It being determined that Doxen, by reason of the non-performance of duties which the bond guaranteed should be faithfully performed, is still liable for the full purchase price of $7,000, it follows that his surety, the appellant, is liable for the same amount. The audit, to which the

appellant has excepted, charges Doxen with $7,000; and we are of the opinion that this is the correct amount for which he is liable, and that under the terms and conditions of the bond the appellant, his surety, is responsible for the payment of that amount. Having determined such liability on the part of the appellant, it can have no interest in the question of how the amount for which it is liable should be distributed. This eliminates the appellant from any further interest in the report and account of the auditor; and since said report and account was finally ratified on April 25th, 1927, there being at that time no other exceptions to the account and distribution stated by the auditor, the orders of the lower court of April 25th, 1927, sustaining the demurrer of William S. Noble to the petition and objections of the appellant, and finally ratifying the auditor's report and account, must be affirmed.

*Orders affirmed, with costs to the appellee.*